UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                              Case No. 8:21-cv-

APPROXIMATELY $1,386,816.12
SEIZED FROM LENDINGCLUB BANK, N.A.
ACCOUNT NUMBER 3110058713

    Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States of America brings this complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G(2), approximately $1,386,816.12 seized from LendingClub Bank, N.A. account number 3110058713 (the Defendant Funds), because the funds constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud) and are, therefore, subject to civil forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1355(b)(1), because pertinent acts or omissions giving rise to the forfeiture occurred in this District.

5. Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). The United States will then execute the warrant on the Defendant Funds pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6. The Defendant Funds consist of approximately $1,386,816.12 seized from LendingClub Bank, N.A. account number 3110058713, held in the name of victim D.H. PA. The funds were seized pursuant to a seizure warrant issued by this Court on June 25, 2021, after a probable cause finding that the contents of the

...
...

account constituted proceeds of violations of 18 U.S.C. § 1343 (wire fraud). The funds are being held in the Treasury Suspense Account.

## BASIS FOR FORFEITURE

7. Pursuant to 18 U.S.C. § 1343, it is a crime to engage in wire fraud. That statute makes it unlawful to devise any scheme or artifice to defraud, or to obtain money by means of false or fraudulent pretenses, representations, or promises, if the person transmits or causes to be transmitted by means of wire communication in interstate or foreign commerce any writings for the purpose of executing such scheme or artifice. 18 U.S.C. § 1343.

8. The Defendant Funds are proceeds of, or traceable to, a wire fraud scheme that operated in violation of 18 U.S.C. § 1343, as described below. Because the Defendant Funds represent proceeds of a violation of 18 U.S.C. § 1343, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes the United States to civilly forfeit any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7). "Specified unlawful activity," is defined in 18 U.S.C. § 1956(c)(7) to include offenses listed in 18 U.S.C. § 1961(1), which, in turn, includes wire fraud conducted in violation of 18 U.S.C. § 1343.

9. As required by Rule G(2)(f), the facts set forth below support a reasonable belief that the government will be able to meet its burden of proof at trial.

Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Funds are proceeds of wire fraud.

10.     Specific details of the facts and circumstances supporting the forfeiture of the Defendant Funds have been provided by United States Department of Homeland Security, United States Secret Service (USSS) Special Agent Bryan Halliwell, who states as follows:

## FACTS

11.     The personal identifying information (PII) of D.H., as well as information for what appears to be D.H.'s related business, D.H., PA, was used to defraud the Kabbage, Inc., an authorized lender of the Small Business Association (SBA), of approximately $1,840,568.00 in COVID-19 loan proceeds allocated under the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act.  The fraudulently obtained funds were then deposited into LendingClub Bank, N.A. account number 3110058713, held in the name of victim D.H. PA (the Subject Account), which was likewise created under the stolen name and identifiers of D.H.  The actions and statements of the person or persons impersonating D.H. were intended and designed to mislead and defraud Kabbage and the SBA.  The theft of D.H.'s identity was orchestrated by a criminal network operating, at least partially, within the Middle District of Florida.

### A.     THE PAYCHECK PROTECTION PROGRAM

12.     In March 2020, the CARES Act was enacted to provide immediate assistance to individuals, families, and organizations affected by the COVID-19 pandemic. Among its various provisions, the CARES Act authorized the SBA to guarantee loans under the Paycheck Protection Program ("PPP"), and the full principal amount of the loans could qualify for forgiveness.

13.     Borrowers were required to use PPP loan proceeds for enumerated purposes, including payroll costs,[1] rent and utilities, and mortgage interest payments. Knowing misuse of PPP funds subjects the borrower to additional liability, such as charges for fraud.

14.     The maximum PPP loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula specified in the CARES Act. The payroll-based formula principally considers the borrower's aggregate payroll costs

---

[1] Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation.

from the preceding twelve months for all domestic employees.[2] Once an average monthly payroll cost is established, the borrower multiplies that amount by 2.5 to arrive at the total maximum PPP loan amount.

### B.    THE PPP APPLICATION PROCESS: SBA FORM 2483

15.    To apply for a PPP loan, potential borrowers electronically submit an SBA Form 2483 with supporting payroll documentation to a financial institution that administers the loan and serves as custodian of the funds. On the SBA Form 2483, an authorized representative must make several certifications about his business operations and related information.  Those certifications include that: (i) the applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099-MISC; (ii) current economic uncertainty made the loan request necessary to support the applicant's ongoing operations; and (iii) the PPP funds would be used to retain workers and to maintain payroll or pay other qualifying expenses.

16.    Further, when submitting the SBA Form 2483, the authorized representative certified that, should he knowingly use the PPP funds for unauthorized purposes, the United States could hold him legally liable, including for charges of fraud.  The applicant must also certify the truth and accuracy of any

---

[2] The payroll-based formula expressly excluded (i) any compensation of an employee whose principal place of residence is outside of the United States; and (ii) the compensation of an individual employee in excess of an annual salary of $100,000, prorated as necessary.

information provided on the SBA Form 2483 and in all supporting documents.[3]

Such supporting documents could include payroll tax filings with the Internal Revenue Service, such as the Employer's Quarterly Federal Tax Return or the "IRS Form 941."

17. Finally, the applicant must certify the following warning regarding false statements and other criminal penalties:

> I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

### C. THE INVESTIGATION

18. Based on SBA documents, it appeared that D.H., through his business, D.H., PA, applied to SBA authorized lender Kabbage and received PPP funds multiple times, despite the PPP application and rules prohibiting applicants from receiving PPP funds more than once.

19. The SBA has documentation for 3 separate PPP loans applied for in

---

[3] Borrowers must submit such documentation as is necessary to establish eligibility for the loan amount. Examples of such documentation includes payroll tax filings (*e.g.*, IRS Forms 941), payroll processor records, IRS Forms 1099-MISC, bank records, or other records sufficient to demonstrate the qualifying payroll amount. As detailed above, the applicant, by submitting such documentation in support of the SBA Form 2483, affirms their veracity.

D.H.'s business name, D.H., PA, including SBA PPP loan number 1737597801 (the D.H., PA PPP application). This application asserted that D.H., PA maintained 55 employees and realized salaries, wages, tips, or compensation of approximately $8,834,730.00 in 2019, prior to the COVID-19 pandemic.

20. The D.H., PA PPP application was submitted to Kabbage, located in Atlanta, Georgia, from Internet Protocol (IP) Address 45.77.74.191 on May 22, 2020 at 2:02:51 PM (EST). A reverse lookup of this IP address via publicly available internet tools found that it resolved to a Choopa, LLC account in Miami, Florida.

21. The D.H., PA PPP application utilized D.H.'s Social Security number and also used D.H., PA's lawfully assigned Employer Identification Number (EIN). The application listed D.H.'s current home address in Hillsborough County, which could have facilitated the PPP's approval incident to public records checks conducted by SBA loan processors.

22. According to the Florida Division of Corporations, D.H., PA is an active business pursuant to formal business filings and has been so since on or about October 3, 2016.

23. The D.H., PA PPP application was approved and, on or about May 27, 2020, $1,840,568.00, the proceeds of SBA PPP loan number 1737597801 (the D.H., PA PPP loan), was transferred from Kabbage to the Subject Account.

### D.   INTERVIEW WITH D.H.

24.   The name, social security number, and address associated with D.H.'s valid Florida driver's license matched the information asserted on the D.H., PA PPP application. However, the photo of D.H. on the Florida driver's license submitted with the D.H., PA PPP application is not a photo of the real D.H.

25.   D.H. has confirmed that the personal identifiers used to create both the D.H., PA PPP application and the Subject Account at LendingClub Bank, N.A. belonged to him. D.H. has further affirmed that he did not apply for the D.H., PA PPP loan or any other PPP loan, nor did he authorize anyone to submit an application under his identity for the PPP program funding. In addition, D.H. has said that the email address associated with the D.H., PA PPP application was not his email address.

26.   D.H. is the owner of D.H., PA and its sole employee.

27.   D.H. further does not have an account with LendingClub Bank, N.A. and denies authorizing anyone to open the Subject Account with LendingClub Bank, N.A. using his identity.

### E.   THE SUBJECT ACCOUNT

28.   The Subject Account was opened on or about May 21, 2020, and is held

in the name of D.H, PA.[4]  The Subject Account was created using D.H.'s stolen name, date of birth, and social security number.

29.     On or about May 21, 2020, and May 22, 2020, the Subject Account received an unexplained deposit of $100.00 from a debit card, and two deposits for $.63 and $.29 from Kabbage.  The account received no other deposits until on or about May 27, 2020, when it received an ACH deposit of $1,840,568.00, representing proceeds from the fraudulent D.H., PA PPP loan.  The account has received no other deposits since that time, although it has routinely accrued monthly interest.

30.     On or about June 15, 2021, LendingClub Bank, N.A. placed a temporary hold on the Subject Account.  At that time, the Subject Account had a balance of approximately $1,386,702.14.

31.     In or about July 2021, $1,386,816.12 was seized by law enforcement from the Subject Account pursuant to a seizure warrant signed by United States Magistrate Judge Christopher P. Tuite, Case No. 8:21-MJ-1612-CPT.

## CONCLUSION

32.     As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of

---

[4] The Subject Account was originally opened with Radius Bank.  Radius Bank was later acquired by LendingClub Bank, N.A. and the Subject Account was converted to an account with LendingClub Bank, N.A.

proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Funds constitute, or are derived from, proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud) and are, therefore, subject to civil forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, pursuant to Supplemental Rule G, the United States requests that this Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule G(3)(b)(1) for the Defendant Funds, initiate a process of forfeiture against the Defendant Funds, and duly notice all interested parties to appear and show cause why the forfeiture should not be decreed. The United States further requests the Court order the Defendant Funds forfeited to the United States for disposition according to law and grant the United States such other and further relief as this case may require.

Dated: August 4, 2021

Respectfully submitted,

KARIN HOPPMANN
Acting United States Attorney

By: *[signature]*
SUZANNE C. NEBESKY
Assistant United States Attorney
Fla. Bar No. 59377
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Tel:   (813) 274-6000
E-mail: suzanne.nebesky@usdoj.gov

## VERIFICATION

I, Bryan Halliwell, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Department of Homeland Security, United States Secret Service (USSS), and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other USSS agents.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 3RD day of August, 2021

_____
Bryan Halliwell
Special Agent
United States Secret Service